UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AARON McQUITTY,
Plaintiff,

CRIMINAL ACTION NO. 13-10659

v.

DISTRICT JUDGE ROBERT H. CLELAND

MAGISTRATE JUDGE MARK A. RANDON

SAVITHRI KAKANI, P.A.,
JANET CAMPBELL, and
BETH FRITZ,
Defendants.
_______________________/

**REPORT AND RECOMMENDATION TO GRANT SAVITHRI KAKANI, P.A.'S MOTION TO DISMISS (DKT. NO. 14) AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 16)**

## I. INTRODUCTION

This is a *pro se* prisoner civil rights case.[1] Plaintiff, Aaron McQuitty, alleges that Defendants failed to properly treat his torn kneecap: he was not given a knee brace, a bottom bunk, gym shoes, or proper medication; and, he was denied access to an orthopedic specialist and permission to go to the hospital for treatment.

Defendant Savithri Kakani, P.A. filed a motion to dismiss (Dkt. No. 14),[2] and Defendants Janet Campbell[3] and Beth Fritz filed a motion for summary judgment (Dkt. No. 16).[4] McQuitty

[1]Plaintiff was released from custody one week after his Complaint was filed.

[2]Because this Magistrate Judge finds that McQuitty's claims fail on the merits, Defendants' argument that McQuitty failed to exhaust his administrative remedies need not be addressed.

[3]Janet Campbell was formerly known as Janet Seets.

[4]On July 15, 2013, Judge Robert H. Cleland dismissed: (1) Daniel Heyns, the Director of the Michigan Department of Corrections; (2) Warden Paul Klee; (3) Grievance Coordinator W. Sweigert; (4) the Bureau of Health Care; and, (5) Prison Health Services (Dkt. No. 7).

did not respond to either motion; the Court dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). Because there is no question of material fact regarding whether Defendants were deliberately indifferent to McQuitty's medical needs or engaged in activity that shocked the conscience, this Magistrate Judge **RECOMMENDS** that Defendants' motions be **GRANTED**, McQuitty's constitutional claims be **DISMISSED WITH PREJUDICE**, and his state-law negligence claim be **DISMISSED WITHOUT PREJUDICE**.

## II. BACKGROUND

### *A. Identification of Defendants*

The remaining Defendants are employees of the Gus Harrison Correctional Facility ("ARF"): Kankani is the Physician Assistant; and, Campbell and Fritz are Registered Nurses.

### *B. Factual Background*[5]

On January 9, 2003, McQuitty tore his right kneecap playing basketball. McQuitty's injury required surgery; his orthopedic surgeon required him to wear a knee brace and use crutches for approximately six months.

McQuitty was subsequently incarcerated; the medical staff at the Wayne County Jail confiscated McQuitty's knee brace. Upon his arrival at ARF, McQuitty did not receive a bottom bunk, gym shoes, or a knee brace. Because of this inadequate medical treatment, McQuitty walks with a limp, and cannot run or stand in place for extended periods of time.

McQuitty also informed Defendants of the constant pain and discomfort in his right knee, and his lower back pain caused by fluid in his spine. But, Defendants refused to prescribe him proper medication or provide a routine medical examination. They also did not allow him to see

[5]The facts are viewed in the light most favorable to McQuitty.

an outside orthopedic specialist or go to the hospital for treatment. McQuitty alleges that Defendants violated his First,[6] Eighth, and Fourteenth Amendment rights; and, were negligent under Michigan law.[7]

## III. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

---

[6]The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. McQuitty's claims are unrelated to the First Amendment and should be **DISMISSED**.

[7]To the extent McQuitty alleges Defendants violated Michigan Department of Corrections policies, these claims lack merit. "Claims under § 1983 may not be based upon alleged violations of state law, nor may federal courts order state officials to comply with their own law." *Smith v. Heyns*, No. 2:13-cv-16, 2013 WL 4499034, at *4 (W.D. Mich. Aug. 20, 2013) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 103 (1984)). In addition, McQuitty alleges – in a conclusory fashion – that he has a civil rights conspiracy claim (Dkt. No. 1 at p. 8 (CM/ECF)). This claim should be **DISMISSED**; conclusory or vague conspiracy accusations that do not describe some "meeting of the minds" cannot state a claim for relief. *See Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) ("pleading requirements governing civil conspiracies are relatively strict").

The moving party has the initial burden of demonstrating an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff").

## IV. ANALYSIS

### *A. Defendants' Motions are Unopposed*

The local court rules of the Eastern District of Michigan required McQuitty to file a response, if he wished to oppose Defendants' motions. E.D. Mich. LR 7.1(c)(1) ("[a] respondent opposing a motion must file a response, including a brief and supporting documents then available"); E.D. Mich. LR 7.1(e)(1)(B) ("[a] response to a dispositive motion must be filed within 21 days after service of the motion"). On September 30, 2013, the Court ordered McQuitty to respond to Defendants' motions by October 28, 2013 (Dkt. No. 19). He failed to respond; therefore, Defendants' motions are unopposed. Notwithstanding McQuitty's lack of opposition, Defendants' arguments are well-taken.

### *B. Constitutional Claims*

McQuitty alleges that Defendants' actions in failing to give him a bottom bunk,[8] gym shoes, a knee brace, and a routine medical examination;[9] failing to prescribe him proper medication;[10] and, prohibiting him from seeing an outside orthopedic specialist and going to the hospital[11] constituted deliberate indifference to his serious medical needs and violated his substantive due process rights.

**1. Eighth Amendment - Cruel and Unusual Punishment**

It is well established that an inmate has a cause of action under 42 U.S.C. § 1983 against prison officials for "deliberate indifference" to his serious medical needs, because it constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). To succeed on a claim of deliberate indifference, McQuitty must satisfy two elements, an objective one and a subjective one. *Wilson v. Seiter*, 501 U.S. 294, 300 (1991).

Assuming McQuitty had a serious medical need, the subjective element requires

---

[8]On April 6, 2011, Diane Strawser, R.N., performed a special needs identification screening and found McQuitty had no disabilities and was not approved for any special accommodations (Dkt. No. 17; Ex. 1 at p. 9 (CM/ECF)). There is also no evidence that McQuitty requested a bottom bunk. As such, this claim should be **DISMISSED**.

[9]This Magistrate Judge is unsure what McQuitty means by a "routine medical examination." Nonetheless, P.A. Kakani examined McQuitty on May 17, 2011, and Nurse Campbell interviewed him on June 27, 2011 (Dkt. No. 17; Ex. 1 at pp. 2, 12 (CM/ECF)). Nurse Strawser also performed an intra-system transfer summary (*Id.* at p. 7) and special needs identification screening on April 6, 2011 (*Id.* at p. 9). As such, this claim should be **DISMISSED**.

[10]In his Complaint, McQuitty alleged that his pain only required him to take ibuprofen or Tylenol, which do not require a prescription (Dkt. No. 1 at p. 3 (CM/ECF)). He does not allege that these over-the-counter medications were unavailable to him. As such, this claim should be **DISMISSED**.

[11]There is no evidence to support McQuitty's allegation that he requested – or needed – to see an outside orthopedic specialist, or go to the hospital. As such, this claim should be **DISMISSED**.

McQuitty to show that Defendants had "a sufficiently culpable state of mind." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citation omitted). "To satisfy the subjective component, [McQuitty] must allege facts which, if true, would show that [Defendants] subjectively perceived facts from which to infer substantial risk to the prisoner, that [they] did in fact draw the inference, and that [they] then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837). Emphasizing the subjective nature of this inquiry, the Supreme Court has noted that "[Defendants'] failure to alleviate a significant risk that [they] should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. Deliberate indifference is characterized by obduracy and wantonness, not inadvertence or good faith error. *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992). Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *Estelle*, 429 U.S. at 106. Nor is McQuitty entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Moreover, where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, courts are reluctant to second guess medical judgments. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

The uncontested record reveals that P.A. Kakani examined McQuitty on May 17, 2011. He found McQuitty's "[r]ight knee ha[d] [a] healed scar from [a] previous surger[y]," and that McQuitty was "stable" (Dkt. No. 17; Ex. 1 at p. 12).[12] P.A. Kakani advised McQuitty to purchase shoes and use them "as needed" (*Id.*). He did not prescribe a knee brace. Nurse Fritz

[12] All page numbers refer to CM/ECF pagination.

also examined McQuitty on July 6, 2011 and found he had tenderness in his knee, but there was no pain with movement; his sensation was intact; his range of motion and gait were within normal limits; he ambulated "fine"; he did not have any spasms, numbness, swelling, weakness, tingling, or discoloration; the area was not warm to touch; and, his knee was "well healed" (Dkt. No. 17; Ex. 2 at p. 5). McQuitty did not present any evidence to support his allegation that he did, in fact, have "major pain and discomfort in [his] right knee" or that he "walk[ed] with a . . . noticeable limp."[13] This Magistrate Judge finds that McQuitty's deliberate indifference claim fails on the second element; P.A. Kakani and Nurse Fritz examined McQuitty and did not subjectively infer that he was at a substantial risk of harm.[14]

Nurse Campbell (Seets) denied McQuitty's grievance on June 27, 2011, relying on P.A. Kakani's opinion that a knee brace was not indicated at the time (Dkt. No. 17, Ex. 1 at p. 2); she had no other involvement in McQuitty's treatment or care. Based on the evidence presented, no reasonable jury could find that Nurse Campbell actually knew McQuitty faced a substantial risk of harm; his deliberate indifference claim against her should be dismissed. *Brim v. Golloway*, No. 2:10-CV-64, 2011 WL 1103126, at *3 (W.D. Mich. March 23, 2011) (finding that plaintiff failed to establish a deliberate indifference claim against a nurse who responded to plaintiff's health care requests).

---

[13]McQuitty presented medical records from Botsford Hospital regarding chest tightness. But, the records simply note that he previously had right knee surgery (Dkt. No. 1 at p. 5 (CM/ECF)).

[14]Nurse Fritz also responded to McQuitty's health care request by informing him of his appointment with P.A. Kakani (Dkt. No. 17; Ex. 1 at p. 10 (CM/ECF)).

### 2. Fourteenth Amendment - Substantive Due Process[15]

To succeed on his substantive due process claim, McQuitty must prove Defendants' actions "[rose] to the conscience-shocking level, typically characterized as deliberate indifference to a citizen's constitutional rights." *Glaspy v. Malicoat*, 134 F.Supp.2d 890, 895 (W.D. Mich. 2001) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 846-50 (1998)). This Magistrate Judge finds Defendants were not deliberately indifferent to McQuitty's medical needs. As such, his substantive due process claim likewise fails.

### *C. Qualified Immunity*

Defendants argue that they are entitled to qualified immunity. The doctrine of qualified immunity generally shields state actors from liability under § 1983 based on their discretionary acts. *Anderson v. Creighton*, 483 U.S. 635, 638-40 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Daugherty v. Campbell*, 935 F.2d 780, 783-84 (6th Cir. 1991). As noted by the Sixth Circuit in *Daugherty*, "[q]ualified immunity entitles its possessor to immunity from suit rather than a mere defense to liability." *Id.* at 783 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Thus, government actors have the freedom to perform their official duties without fear that even a slight misstep will trigger their financial ruin. *Wyatt v. Cole*, 504 U.S. 158, 167 (1992).

Government actors may lose this immunity when they violate clearly established constitutional rights of which a reasonable person should have known. *Anderson*, 483 U.S. at

---

[15] Alhough Defendants did not respond to McQuitty's substantive due process claim, this Magistrate Judge finds it would be futile and an uneconomical use of judicial resources to conduct further proceedings on this claim. As such, McQuitty's substantive due process claim is included in this report and recommendation.

638-39; *Harlow*, 457 U.S. at 818. "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action." *Anderson*, 483 U.S. at 639 (quoting *Harlow*, 457 U.S. at 819).

McQuitty bears the burden to defeat this immunity, which is a legal issue to be decided by the Court. *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999). A court must consider: (1) whether, viewing the evidence in the light most favorable to the injured party, a constitutional right has been violated; and, (2) whether that right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts are not required to address these questions in sequential order. *Pearson v. Callahan*, 555 U.S. 223 (2009).

"When conducting an inquiry to determine whether a constitutional right is clearly established, the law of our [C]ircuit requires us to look first to decisions of the Supreme Court, then to decisions of this Court and other courts within our [C]ircuit, and finally to decisions of other circuits." *Daugherty*, 935 F.2d at 784 (citations and quotation marks omitted). The standard for qualified immunity "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified. . . ." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987)) (quotation marks omitted). Thus, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Russo*, 953 F.2d at 1042. Although it need not be the case that "the very action in question has previously been held unlawful . . .[;] in the light of pre-existing law the unlawfulness must be apparent." *Id.* Immunity applies if reasonable officials could disagree as to whether the conduct violated McQuitty's rights.

*McCloud v. Testa*, 97 F.3d 1536, 1553 (6th Cir. 1996). However, the doctrine offers no protection to "the plainly incompetent or those who knowingly violate the law." *See Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In light of the above analysis, this Magistrate Judge finds Defendants should alternatively be entitled to qualified immunity; their actions were not objectively unreasonable in light of clearly established law.

***D. State-Law Negligence Claim***

Even if the Court finds that McQuitty has plead a viable state-law negligence claim, "district courts may decline to exercise supplemental jurisdiction over a claim under [28 U.S.C. § 1367](a) if[] the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3); *Grace v. USCAR*, 521 F.3d 655, 679-80 (6th Cir. 2008) (recognizing it is within a court's discretion to determine whether to continue to exercise supplemental jurisdiction over any remaining state-law claims when: (1) a court's subject matter jurisdiction is predicated on federal question jurisdiction; and, (2) all federal claims are dismissed). "Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (citations and internal quotations omitted). Because McQuitty's federal claims lack merit, the Court should decline to exercise supplemental jurisdiction over his state-law claim.

## V. CONCLUSION

Because there is no question of material fact regarding whether Defendants were

deliberately indifferent to McQuitty's medical needs or engaged in activity that shocked the conscience, this Magistrate Judge **RECOMMENDS** that Defendants' motions be **GRANTED**, McQuitty's constitutional claims be **DISMISSED WITH PREJUDICE**, and his state-law negligence claim be **DISMISSED WITHOUT PREJUDICE**.[16]

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. *See* Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule

[16]McQuitty also requests the appointment of counsel; this request should be **DENIED AS MOOT**.

without awaiting the response.

s/Mark A. Randon
Mark A. Randon
United States Magistrate Judge

Dated: January 9, 2014

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, January 9, 2014, by electronic and/or ordinary mail.*

*s/Eddrey Butts*
*Case Manager to Magistrate Judge Randon*